UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QUINTON P. BROWN,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>STEVEN SAGER, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. C23-157-LK-MLP<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Quinton Brown is in the custody of the Washington Department of Corrections ("DOC") and is currently confined at the Monroe Correctional Complex ("MCC") – Twin Rivers Unit ("TRU"). Plaintiff alleges in this action that Defendants substantially burdened the practice of his religion, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Washington State Constitution, when they refused to assign him a single-man cell as a religious accommodation. (*See* Compl. (dkt. # 5).) Plaintiff identifies TRU Custody Unit Supervisor Steve Sager, TRU Sergeant Oscar Cullum, and former TRU Superintendent Eric Jackson as Defendants in his complaint. (*Id*. at 3.) Plaintiff requests declaratory and injunctive relief.

REPORT AND RECOMMENDATION
PAGE - 1

Defendants have filed a motion for summary judgment which is now ripe for review. (Defs.' Mot. (dkt. # 14).) Defendants Sager and Cullum have submitted declarations in support of their motion (Sager Decl. (dkt. # 15); Cullum Decl. (dkt. # 16)). Plaintiff has filed a response opposing Defendants' motion (Pl.'s Resp. (dkt. # 20)), and Defendants have filed a reply in support of their motion (Reply (dkt. # 21)), together with an additional declaration from MCC employee Dianna Rule (Rule Decl. (dkt. # 22)). The Court, having reviewed Plaintiff's complaint, Defendants' summary judgment motion, and the briefing of the parties, concludes that Defendants' motion should be granted, and that Plaintiff's complaint and this action should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Facts

Plaintiff has been in the custody of the DOC since November 2004, and has been housed at various DOC facilities during the course of his almost 19-year confinement. (*See* Rule Decl., Ex. 1 at 4-23.) Plaintiff was transferred to TRU in December 2017. (*Id*., Ex. 1 at 12.) According to Plaintiff, the purpose of this move was to facilitate his access to Jewish services and holy day observances. (Compl. at 33.) Plaintiff describes in great detail his sincerely held Jewish beliefs and practices, and he asserts that central to his religious commitment are his thrice daily Jewish prayers, which must be conducted in a religiously suitable environment at their prescribed times. (*See id*. at 8- 21.)

Plaintiff's daily prayer regimen is extensive, requiring approximately one and a half to two hours in the morning, a half hour in the afternoon, and up to one hour in the evening. (Compl. at 11.) He further explains that Sabbath services and Jewish holy day observances require even more extensive prayers and that those prayers must generally be conducted in his

cell because of the TRU operational schedule and/or because group prayer in the TRU activities building is permitted only if the contract Jewish Chaplain is available to supervise, which is apparently infrequent. (*See id*. at 11, 39-41.) Plaintiff asserts that the Torah forbids him from praying or worshipping in places where there are unclothed or partially clothed persons, or in places where there is urine, excrement, garbage, or anything that produces a bad odor. (*See id*. at 11, 22.) According to Plaintiff, these requirements necessitate he be assigned to a single-man cell so he can maintain "purity of body and places for holding services." (*Id*. at 22.)

Pursuant to DOC Policy 400.020, single cell occupancy is available to individuals who meet one or more of the following criteria: (1) Severe mental disability; (2) Serious mental illness; (3) Sexual predator; (4) Likely to be exploited or victimized by others; (5) Maximum custody; (6) Other special needs. (*See* Cullum Decl., Attach. K (DOC Policy 400.020, Directive III(A)).) A separate TRU policy permits offenders to request that they be placed on a wait list for a single cell, outside of the criteria set forth above, and when an offender reaches the top of the wait list, they are provided the opportunity to go into the next available single cell. (*See* Pl.'s Exs. (dkt. # 5-1), Append. 2, pp. 7-8.[1])

It appears Plaintiff submitted requests to be placed on his unit's single cell wait list as early as 2019, in accordance with TRU policy. (*See* Compl. at 33-35.) However, in December 2020, having not yet been assigned a single cell through the regular process, Plaintiff for the first time requested that he be assigned a single cell as a religious accommodation under DOC Policy 560.200[2] and RLUIPA. (*See* Compl. at 24-25; *see also* Pl's Resp. at 4-5.) Plaintiff asserts that he first contacted TRU Chaplain David Sherman via kite on December 10, 2020, and requested a

---

[1] Plaintiff submitted a number of exhibits in support of his complaint, which can be found at dkt. # 5-1 and will be cited going forward as "Pl.'s Exs."

[2] DOC Policy 560.200 governs religious programs at DOC facilities.

REPORT AND RECOMMENDATION
PAGE - 3

religious accommodation for a single cell but never received a written response. (Compl. at 24.) Plaintiff thereafter filed a grievance requesting such an accommodation and was advised in the grievance response, dated March 8, 2021, that "[t]he DOC does not prioritize incarcerated individuals for placement into single-man cells based on religious preferences or practice."[3] (*See id*. at 24-26; *see also* Pl.'s Exs., Attach. B.)

Plaintiff appealed the denial of his initial grievance, and the appeal response, signed by Defendant Jackson on April 29, 2021, upheld the denial of Plaintiff's grievance and advised that "[c]ell assignment or placement on the single man cell list is not based on religion or religious preference." (Compl. at 26-27; Pl.'s Exs., Attach. C.) It was also noted in the appeal response that Plaintiff had been assigned a single cell on March 21, 2021, through the existing TRU procedures. (Pl.'s Exs., Attach. C.)

Despite the fact that Plaintiff had by that time been assigned a single cell, he nonetheless appealed Defendant Jackson's appeal response to the headquarters level, taking issue with the fact that the DOC permits assignment of individuals to single-man cells for a variety of reasons, but does not permit single-man cell assignments for religious purposes. (*See* Compl. at 28-29; Pl.'s Exs., Attach. D.) This final appeal was denied as well, and the response again explained that bed assignments were not based upon religion. (Pl.'s Exs., Attach. D.)

In early 2022, Plaintiff lost his single cell assignment when he was transferred to a new housing unit. (Dkt. 20 at 16.) However, Plaintiff was subsequently returned to his original housing unit and was assigned a single cell on September 9, 2022, where he currently remains.

---

[3] While his initial grievance was pending, Plaintiff also sent a kite to Defendant Sager complaining that single-man cells were not provided for valid religious reasons. (*See* Pl.'s Exs., Attach. E.) Defendant Sager responded: "We do not provide single cells to persons out of order due to religious reasons. Religion is not a valid reason to be granted a single cell ahead of those on the list." (*See id.*)

REPORT AND RECOMMENDATION
PAGE - 4

(Cullum. Decl. at ¶10; *see also* Rule Decl., Ex. A at 5-8.).

**B.    Plaintiff's Claims**

Plaintiff alleges that Defendants Sager, Cullum, and Jackson, by refusing to accommodate his religious request for a single-man cell, prevented him from "engaging in Torah commanded thrice-daily Jewish prayer. In a religiously [ac]ceptable environment and at their prescribed times – which are fundamental to Judaism." (Compl. at 21.) Plaintiff claims that Defendants, by preventing him from conducting his Jewish prayers and rituals consistent with his sincere religious beliefs, substantially burdened his exercise of his religion in violation of RLUIPA and Article One, section Eleven, of the Washington State Constitution. (*See id*. at 2, 41.) Plaintiff requests in his complaint that he be awarded declaratory relief and an injunction that orders Defendants to provide him a single cell assignment. (*Id.* at 42.)

### III.    DISCUSSION

**A.    Applicable Standards**

*1.    Summary Judgment Standard*

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the non-movant's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden of

persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the non-moving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the non-moving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

B.     Analysis

The Court begins by observing that Defendants' summary judgment motion misses the mark in a number of ways as Defendants appear to misconstrue Plaintiff's claims and the facts upon which they rely. (*See* Defs.' Mot.) This is likely attributable, at least in part, to the lack of clarity in Plaintiff's complaint, which is quite lengthy and contains extraneous facts that are not relevant to the claims Plaintiff apparently intends to assert in this action. (*See* Compl.) Plaintiff clarifies in his response to Defendants' motion that his intended claims are that Defendants violated RLUIPA and the Washington Constitution, and that these claims are based on what Plaintiff refers to as his "RLUIPA requests" for a single-man cell as a religious accommodation, first made in December 2020, and not to any prior interactions with Defendants pertaining to his request for a single cell.[4] (See Pl.'s Resp. at 1-4.) Plaintiff also indicates in his response that he is seeking injunctive relief in the form of an order directing the State to "provide him with a single-cell housing status, based upon his requested religious accommodation, under RLUIPA and Wash. Const. Art. 1, § 11, which will permit Brown to create and maintain the 'Purity of Body, and Places for Holding Services,' necessary for Jewish prayer – as Torah commands of Brown[.]" (*Id*. at 2.) The Court will address herein only the arguments pertaining to Plaintiff's clarified claims.

RLUIPA provides in relevant part that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows the burden furthers "a compelling governmental interest" and is the

---

[4] Defendants appear to have read a First Amendment Free Exercise claim into Plaintiff's pleading, and they present a number of arguments in their summary judgment motion pertinent to such a claim. However, the Court did not identify any such claim in Plaintiff's pleading, and Plaintiff's clarification of his claims contains no reference to such a claim. (*See* Defs.' Mot. at 2, 5-6, 13-16; Pl.'s Resp. at 1-4.)

"least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also Cutter*, 544 U.S. at 715.

RLUIPA does not define what constitutes a "substantial burden." However, the Ninth Circuit, in the RLUIPA context, has described a "substantial burden" as a "limitation of religious practice . . . [that] 'impose[s] a significantly great restriction or onus upon such exercise.'" *Walker v. Beard*, 789 F.3d 1124, 1135 (9th Cir. 2015) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden must place more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)) (internal quotation marks omitted).

A plaintiff bears the initial burden under RLUIPA of demonstrating that the challenged state action imposes a substantial burden on the exercise of his religious beliefs. *See Warsoldier v. Woodford*, 418 F.3d 989, 994-995 (9th Cir. 2005). Once a plaintiff establishes that the government's refusal to provide religious accommodation substantially interfered with his religious exercise, the burden shifts to the government to prove that its action was "in furtherance of a compelling governmental interest" and was the "least restrictive means of furthering that compelling governmental interest." *Id.* at 995 (quoting 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)).

The Supreme Court has acknowledged that RLUIPA's requirements are not unlimited and do not "elevate accommodation of religious observances over an institution's need to

maintain order and safety." *Cutter*, 544 U.S. at 722. The Supreme Court has further acknowledged that if "inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution," a prison system may "resist the imposition." *Id*. at 726.

Defendants argue in their motion papers that Plaintiff has failed to allege a substantial burden under RLUIPA and that Plaintiff's claim for injunctive relief is moot. (Reply at 2-6.) This Court agrees. Plaintiff filed his complaint in this action on February 1, 2023. (*See* dkt. # 1.) At that time, Plaintiff was housed in a single-man cell, and he apparently continues to be housed in a single cell at TRU. Plaintiff nonetheless argues that Defendants have violated RLUIPA by denying him a religious accommodation and thereby "prevent[ing] Pltf. from his: thrice daily Jewish prayer & Sabbath observances (at their prescribed time), in a religiously suitable environment, which, Brown seeks in a single-man cell." (Pl.'s Resp. at 24.) However, by Plaintiff's own admission, he is currently in a religiously suitable environment where he is able to engage in prayer as mandated by his Jewish faith, *i.e.,* a single-man cell. The facts alleged by Plaintiff simply do not demonstrate that he is subject to any significant restrictions on his religious exercise at present.

Plaintiff suggests that the fact that he was assigned to a single-man cell for non-religious reasons rather than as a religious accommodation makes his RLUIPA claims viable because the DOC policy that prevents him from being assigned a single-man cell as a religious accommodation remains in place. (*See* Pl.'s Resp. at 15, 22-24.) However, regardless of the reason Plaintiff was assigned a single-man cell, he is now able to practice his religion as he sees fit. Plaintiff fails to explain how the DOC policy, by virtue of the fact that it does not contain a religious exemption, in any way restricts his current ability to practice his religion. Plaintiff's

concern appears to be that should he be transferred out of his single cell for some reason, as has happened in the past, he will be consigned to following the standard TRU process for regaining his single cell status rather than being given preference for such status based upon his religious needs. However, such concerns are based upon mere speculation at this juncture and provide no basis for relief.

For similar reasons, the Court concurs with Defendants that Plaintiff's request for injunctive relief is moot. This Court's jurisdiction depends on the existence of a live case or controversy. *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). A case is moot "when it has 'lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law.'" *Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)). If an issue in a case is no longer in dispute, or a party receives the requested relief, then the issue may be moot. *Alvarez v. Hill*, 667 F.3d 1061, 1063-64 (9th Cir. 2012) ("A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"). Because "[t]he jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution," we must dismiss a case that has become moot. *Pub. Util. Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (quoting *GTE Cal., Inc. v. FCC,* 39 F.3d 940, 945 (9th Cir. 1994)).

A court may review a claim that is moot if it implicates a practice that is "capable of repetition yet evading review." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013). In such cases, "there must be a reasonable likelihood that the same party will be subject to the action again,'" and the "'duration of the challenged action or injury must be too short to be fully litigated.'" *Id.* (quoting *NAACP, W. Region v. City of Richmond*, 743 F.2d 1346,

1353 (9th Cir. 1984)). "Absent a sufficient likelihood that [they] will again be wronged in a similar way, [a plaintiff] is no more entitled to an injunction than any other citizen[.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiff maintains that his claims are not moot because he has not been granted the religious accommodation under RLUIPA that he requested. (Pl.'s Resp. at 14.) Once again, however, Plaintiff is currently assigned to a single-man cell where he is able to freely practice his religion in the manner he sees fit. This is the relief he requested in his complaint. While it is conceivable that Plaintiff could be removed from his single cell at some point in the future, it is not a foregone conclusion that such an event would create a substantial burden on his religious exercise. Plaintiff suggests that having any cellmate at all interferes with his exercise of his religious beliefs because he cannot maintain the necessary cleanliness in the cell. (*See* Compl. at 38; *see also* Pl.'s Exs., Attach, B, C.) However, it cannot be concluded, based on the current record, that sharing a cell with another inmate at some future time will inevitably substantially burden Plaintiff's religious activities.

For the reasons discussed above, Plaintiff's request for injunctive relief is moot. And, as that is the only relief available to Plaintiff under RLUIPA, *see Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014), and as Plaintiff has not demonstrated that any mootness exception applies, Plaintiff's RLUIPA claim must necessarily be dismissed. Plaintiff's state law claim must similarly be dismissed because, again, Plaintiff seeks only injunctive relief in this action and, thus, any claim under the Washington Constitution is moot as well.

//

//

//

REPORT AND RECOMMENDATION
PAGE - 11

## IV.    CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment be granted, and that Plaintiff's complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 1, 2023**.

DATED this 7th day of November, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge