UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QUINTON P. BROWN,

             Plaintiff,

   v.

STEVEN SAGER et al.,

             Defendants.

CASE NO. 2:23-cv-00157-LK-MLP

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION

      This matter comes before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Michelle L. Peterson, recommending granting Defendants' motion for summary judgment and dismissing Plaintiff Quinton P. Brown's complaint with prejudice. Dkt. No. 23 at 12. Mr. Brown, who is proceeding pro se and *in forma pauperis*, timely objected to the R&R. Dkt. No. 26. Having reviewed the R&R, Mr. Brown's objections, and the balance of the record, the Court adopts in part and modifies in part Judge Peterson's recommendations as set forth below.

## I. BACKGROUND

**A.  Mr. Brown's Religious Beliefs and the Nature of His Complaint**

Mr. Brown is currently incarcerated at the Monroe Correctional Complex, Twin Rivers Unit ("TRU"). Dkt. No. 5 at 2; Dkt. No. 22-1 at 2. He initiated this action to vindicate his right to exercise his sincerely held Jewish beliefs and practices. Dkt. No. 5 at 1–2, 4. In his verified complaint, he alleges that "the heart of [his] sincere religious commitment[] lays in his thrice daily Jewish prayers[] in a religiously suitable environment[.]" *Id.* at 9; *see also id.* at 11 (describing his "extensive" daily prayer schedule as well as his Sabbath and holiday schedule). He claims that Washington State Department of Corrections ("DOC") employees Steven Sager, Oscar Cullum, and Eric Jackson deprived him of the ability to engage in his daily prayers in a religiously acceptable environment by denying his request to be housed in a single cell as a form of religious accommodation. *Id.* at 2–3, 21–23, 30.

Based on Defendants' purported misconduct, Mr. Brown asserts claims under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), and Article 1, section 11 of the Washington State Constitution. *Id.* at 1–2, 23. Specifically, he alleges that he "has been and will continue to be irreparably injured by the conduct of the Defendants/prison officials unless this Court grants the declaratory and injunctive relief which [he] seeks." *Id.* at 42. This requested relief includes a judgment declaring that "the acts and omissions described herein violate [Mr. Brown's] rights under the Constitution and laws of the United States and the State of Washington," as well as a "preliminary and permanent injunction ordering Defendants to provide a single cell assignment" to Mr. Brown. *Id.* Notably, Mr. Brown alleges that prior to filing this action—in approximately March 2021—he "was finally assigned to a single cell," and that upon moving in was able to "bring the single cell environment into conformity with the rigorous religious dictates" of Judaism. *Id.* at 35–36; *see id.* at 36 ("As a direct

result of being moved into [his single cell], Mr. Brown was able to meticulously maintain the religious purity of the environment in his prison cell[] for holding services.").

B. **Mr. Brown's Efforts to Obtain a Religious Accommodation in the Form of Single Cell Housing Under Existing DOC Policy**

By way of background, Mr. Brown alleges that he was transferred from Stafford Creek Corrections Center to TRU in late 2017 "to facilitate his access to Jewish services and Holy-Day observances." *Id.* at 33. After a temporary transfer to a different housing unit within TRU in 2019, Mr. Brown requested that his name be added to B-Unit's single cell waiting list. *Id.* at 34; *see also* Dkt. No. 15 at 2 (Declaration of Defendant Sager: "Brown made several cell change requests, and he wanted to be in a single cell."); Dkt. No. 5 at 14 (Mr. Brown's allegation that he has been "both ridiculed and taunted—by not only his cellmates; but, also from other inmates, who have been told by his cellmate" about some of his Jewish customs). As relevant here, on December 10, 2020, Mr. Brown submitted a kite to TRU Chaplain David Sherman requesting a religious accommodation for a single-person cell in order to conduct his daily prayers, but claims that he never received a written response. Dkt. No. 5 at 24; *see* Dkt. No. 5-1 at 2.[1]

On December 22, 2020, Mr. Brown followed up with an initial grievance complaint, which he then rewrote in early January 2021. Dkt. No. 5 at 24–25; Dkt. No. 5-1 at 2, 4. Mr. Brown submitted another "written request" along similar lines on January 29, 2021, which Defendant Sager responded to on February 5, 2021, stating that "[r]eligion is not a valid reason to be granted a single cell ahead of those on this list." Dkt. No. 5 at 25–26; Dkt. No. 5-1 at 10; *see also* Dkt. No. 15 at 2 ("While I did not work on Brown's cell change request myself, I did discuss the request

---

[1] Defendant Cullum attests that Brown submitted a cell change request for a single cell in March 2018, and that he also "requested a transfer to a different wing so that he could be nearer [to] two individuals who were of the same religion." Dkt. No. 16 at 2; *see also* Dkt. No. 16-1 at 2. Mr. Brown does not dispute that he asked to be placed on the waiting list for a single cell in March 2018, but maintains that his 2018 request does not serve as a basis for his claims in this action. Dkt. No. 20 at 3.

with Brown. I explained to Brown that DOC does not place individuals in cells based on religious identity."). Sager responded in a similar fashion to Mr. Brown's grievance on March 8, 2021. Dkt. No. 5 at 26; Dkt. No. 5-1 at 4. Mr. Brown appealed that decision two days later, and his level II appeal was denied on April 29, 2021. Dkt. No. 5 at 26–27; Dkt. No. 5-1 at 6. On May 6, 2021, Mr. Brown submitted a level III appeal which was denied on September 8, 2021. Dkt. No. 5 at 28–29; Dkt. No. 5-1 at 8.

When he did reach the top of the waiting list for a single cell in B-Unit, Mr. Brown claims that Cullum informed him that he would not move any inmate from a lower-level single cell to an upper-level single cell on Mr. Brown's behalf, despite Mr. Brown's need for a lower-level single cell for medical reasons as a result of "multiple surgeries and limited mobility." Dkt. No. 5 at 34; *see also* Dkt. No. 16 at 2 (Declaration of Cullum: "I denied Brown's request because there were no available single cells on the lower tier. For a long time, Brown's Health Status Reports indicated that he was to use a cane and a walker."); Dkt. No. 16-1 at 26, 28, 30, 32. Cullum informed Mr. Brown that he would have to wait until one of the five lower-level single cells opened up, even though Mr. Brown contends that at the time, inmates on the lower level were willing and/or able to move into one of the 15 upper-level single cells to make space for him. Dkt. No. 5 at 34–35; Dkt. No. 20 at 6; *see also* Dkt. No. 16 at 3; *id.* at 2 ("At the time of Brown's request, there were no single cells on the lower tier. Brown asked me to remove someone from the lower tier single cell, but that is not how cell assignments are made."); *id.* ("The other individuals who were in single cells on the lower tier also had Health Status Reports that they be on a lower tier."). Mr. Brown submitted additional cell change requests for a single cell in March 2021, both of which Cullum appears to have denied. Dkt. No. 16 at 2–3; Dkt. No. 16-1 at 24, 34.

As noted above, however, Mr. Brown avers that his reassignment to a single cell in B-Unit occurred in March 2021. Dkt. No. 5 at 35; *see also* Dkt. No. 5-1 at 6 (Defendant Jackson's Level

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 4

II response noting that "[o]n 3/21/21, through the current Cell/Room procedures and assignments you have been assigned a single cell[.]"). Mr. Brown claims that his cell reassignment allowed him to sustain an environment suitable for his daily prayer routine. *See* Dkt. No. 5 at 35–39.

Elsewhere in the record, Mr. Brown describes temporarily being transferred out of a single cell in B-Unit to a two-man cell in D-Unit in early 2022. Dkt. No. 20 at 16–17. It is undisputed that Mr. Brown has been continuously assigned to a lower-level single cell in B-Unit since at least as early as September 2022. Dkt. No. 14 at 1, 3, 9; Dkt. No. 16 at 3.

C.  **Defendants' Motion for Summary Judgment**

After answering Mr. Brown's complaint, Dkt. No. 12, Defendants moved for summary judgment, Dkt. No. 14. Defendants argue that Mr. Brown's RLUIPA claim should be dismissed as moot, or in the alternative, dismissed for failure to state a claim. *Id.* at 7–13; *see also* Dkt. No. 21 at 2–6. Defendants further contend that Mr. Brown fails to present a genuine dispute as to a free exercise claim under the First Amendment because he cannot show that Defendants placed a substantial burden on his religious practice, and that the Court should decline to exercise supplemental jurisdiction over his Washington State constitutional claim. Dkt. No. 14 at 13–16.[2] Defendants also claim that they are entitled to qualified immunity for damages resulting from any alleged constitutional violations, that they are entitled to Eleventh Amendment immunity for any monetary damages, and that any Section 1983 claims against Defendants Sager and Jackson should be dismissed for lack of alleged personal participation. Dkt. No. 14 at 5–9.

---

[2] As Judge Peterson points out, Mr. Brown does not appear to allege the First Amendment Free Exercise claim to which Defendants "respond." Dkt. No. 23 at 7 n.4; *see also* Dkt. No. 20 at 28 (noting that "due to page limits," Mr. Brown "abandon[]s *Turner*'s First Amendment claims, except for one issue[.]" (citing Dkt. No. 14 at 14–15)). In addition, Defendants argue for the first time on reply that Mr. Brown does not have a private right of action under the Washington Constitution. Dkt. No. 21 at 6. However, for the reasons detailed below, the Court does not reach the merits of Mr. Brown's claims and thus does not address the propriety of Defendants' arguments.

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 5

Mr. Brown responded to Defendants' motion, arguing that his RLUIPA claims are not moot because although he is "currently in a single-man cell[] because of an entirely 'non-religious' factor," Defendants' policy "that prevents him from being assigned to a single[] cell for a religious accommodation[] is still an active prison regulation." Dkt. No. 20 at 15; *see also id.* at 26–28 (highlighting DOC's policy of not permitting housing requests on the basis of religious accommodation); *id.* at 29–30 ("Brown's request is typical of a request for injunctive relief under RLUIPA, in which a court orders institutional defendants to provide a[n] exception to an existing policy to uphold the constitutional/statutory rights of the incarcerated."). Mr. Brown also includes a heading, without corresponding elaboration, that he "does not challenge qualified immunity from damages[.]" *Id.* at 13. And last, Mr. Brown notes that his Washington State Constitution claim is "identical" to his RLUIPA claims, and "should move forward." *Id.* at 28.

**D.     Judge Peterson's R&R**

In her R&R, Judge Peterson recommends granting Defendants' motion for summary judgment and dismissing Mr. Brown's claims with prejudice. Dkt. No. 23 at 12. More specifically, the R&R concludes that because Mr. Brown was housed in a single-man cell at the time he filed his complaint and he continues to be housed in such a cell, he fails to demonstrate that "he is subject to any significant restrictions on his religious exercise at present." *Id.* at 9. Moreover, Judge Peterson explains that "regardless of the reason [Mr. Brown] was assigned a single-man cell, he is now able to practice his religion as he sees fit," and he has not otherwise demonstrated "how the DOC policy, by virtue of the fact that it does not contain a religious exemption, in any way restricts his current ability to practice his religion." *Id.* And the R&R finds Mr. Brown's concerns about regaining his single cell status should he be transferred to a two-man cell in the future to be "based upon mere speculation at this juncture[.]" *Id.* at 10. For similar reasons, the R&R concludes that

Mr. Brown's request for injunctive relief under RLUIPA or state law is also moot and must be dismissed. *Id.* at 10–11.

Mr. Brown timely objected to the R&R, requesting that the Court decline to adopt the R&R and deny Defendants' motion. Dkt. No. 26 at 10–11. He "agrees with [Judge Peterson's] overal[l] summary of the Court[']s[] background[] facts," but seeks to clarify certain "issues" such as the reason he requested to be assigned to a single cell in December 2020, i.e., to conduct daily prayers and Jewish services in a religiously suitable space. *Id.* at 2–3.

He again notes that current DOC policy and procedures do not allow for an inmate to be placed in a single cell for religious reasons, and thus claims the State will continue to deny him cell change requests based on religious practice. *Id.* at 3–4. Mr. Brown also argues that although he "has received some of what he sought"—namely, a single cell constituting a religiously suitable prayer environment—his claims are not moot because the Court can still order DOC to modify its policies to allow for inmates to be placed in single cells for religious reasons in accordance with RLUIPA. *Id.* at 4–7; *see also id.* at 6 ("Mr. Brown seeks permanent injunctive relief, via RLUIPA; to properly or legally convert his housing status of being housed in a single cell from being a 'privilege' to a 'religious right[,]'" and "to conduct his daily Jewish prayers and Sabbath observ[an]ces (at their prescribed time) in a religiously suitable environment[] on a continuous basis"). Furthermore, Mr. Brown requests that the Court order "permanent injunctive relief" to preclude Defendants from moving him from a single cell to a two-man cell "while [he] awaits release in 2033," because he has shown that Defendants previously placed him in two-man cells and denied his requests for a religious accommodation in the form of single cell status. *Id.* at 7–9.

Defendants filed a response to Mr. Brown's objections, reiterating their arguments that his claims are moot and that he does not raise a viable claim under RLUIPA. Dkt. No. 27 at 1–3.

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 7

## II. DISCUSSION

### A. Legal Standards

#### 1. Reviewing the R&R

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

#### 2. Standing and Mootness

Before proceeding to the merits of a case, federal courts must determine that they have jurisdiction. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Id.*; *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (noting the court's "obligation to assure [itself] that [plaintiff] had Article III standing at the outset of the litigation"). The Supreme Court and Ninth Circuit have both held that "whether or not the parties raise the issue, federal courts are required sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (cleaned up); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Determining whether standing exists turns on an evaluation of the facts as they stood at the time the plaintiff filed the complaint. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007). And it is the plaintiff that "bears the burden of showing that he has standing

for each type of relief sought," including for injunctive relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to establish standing for seeking an injunction, for example, a plaintiff must demonstrate (1) that "he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical;" (2) "it must be fairly traceable to the challenged action of the defendant; and" (3) "it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers*, 555 U.S. at 493; *accord Lujan*, 504 U.S. at 560–61; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (a "threatened injury must be certainly impending to constitute injury in fact"; allegations of a "possible future injury" are insufficient (cleaned up)); *Strike 3 Holdings LLC v. Doe*, 849 F. App'x 183, 185 (9th Cir. 2021) ("Standing for declaratory relief requires a similar showing as any other case or controversy.").

Put another way, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (cleaned up). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). "Nor does speculation or subjective apprehension about future harm support standing"; rather, "[o]nce a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a real or immediate threat that he will again be wronged in a similar way." *Id.* (cleaned up). In addition to these elements, "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Bates*, 511 F.3d at 985.

"Standing and mootness are similar doctrines: Both require some sort of interest in the case, and both go to whether there is a case or controversy under Article III." *Jackson v. Cal. Dept. of Mental Health*, 399 F.3d 1069, 1072 (9th Cir. 2005). However, the doctrines have important

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 9

differences. *Id.* For example, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," and the party asserting mootness carries a heavy burden to show that "subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (cleaned up). "By contrast, . . . it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Id.* at 190 (cleaned up). Thus, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* In addition, there are exceptions to mootness that do not apply to standing, such as the exception for cases that are "capable of repetition, yet evading review." *Jackson*, 399 F.3d at 1073 (citing *Laidlaw*, 528 U.S. at 191).

### B. The Court Adopts in Part and Modifies in Part the R&R, and Dismisses Mr. Brown's Claims for Lack of Standing

The parties and the R&R address the issue of mootness based on Mr. Brown's placement in a single cell prior to the outset of litigation. *See* Dkt. No. 14 at 7–9; Dkt. No. 20 at 14–17; Dkt. No. 21 at 5–6; Dkt. No. 23 at 9–11; Dkt. No. 26 at 5–9; Dkt. No. 27 at 1–2. For mootness, "the 'central question' . . . is 'whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.'" *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (quoting *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n. 4 (9th Cir. 2000)). In this case, though, the circumstances in dispute at the beginning of litigation remain the same; in other words, a live case or controversy was never present in this litigation and there was therefore nothing that could become moot. Upon consideration of the conceptually related but legally distinct question of whether Mr. Brown has

1   standing to assert his claims, the Court finds that Mr. Brown has not adequately demonstrated an

2   injury in fact that a favorable judicial decision will redress. *See, e.g.*, *Laidlaw*, 528 U.S. at 191

3   ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable

4   of repetition yet evading review will not entitle the complainant to a federal judicial forum.").

5         As set forth in his verified complaint and subsequent filings, Mr. Brown's alleged injury

6   arises from Defendants' past conduct between December 2020 and March 2021, subjecting him to

7   a DOC policy that does not prioritize placement into single-man cells based on religious preference

8   or practices, as well as the possibility that he will be subjected to this policy again in the future.

9   *See, e.g.*, Dkt. No. 5 at 2, 24–35. Based on Defendants' adherence to DOC policy, and despite his

10  subsequent placement in a single cell, Mr. Brown requests prospective relief in the form of (1) a

11  "declaration" that the "acts and omissions" described in his complaint "violate his rights under the

12  Constitution and laws of the United States and the State of Washington," and (2) a "preliminary

13  and permanent injunction ordering Defendants to provide a single cell assignment" to him. *Id.* at

14  2, 42.[3] Neither party disputes that Mr. Brown, at the time he initiated this action in February 2023

15  and throughout the pendency of this litigation, has lived in a single cell where he can pray and

16  practice Judaism in a religiously acceptable environment. *See id.* at 35–39; Dkt. No. 16 at 3.

17        The issue with Mr. Brown's injury-in-fact showing is twofold. First, as the R&R points

18  out, his placement in a single cell by virtue of waiting on the normal list and not as a result of his

19  "religious right," does not by itself constitute a concrete and particularized legal harm. *See* Dkt.

20  No. 23 at 9; Dkt. No. 26 at 6; *see also, e.g.*, *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022)

21  ("A concrete injury is one that actually exists, meaning that it is real, and not abstract." (cleaned

22  up)); *Spears v. Benton*, No. 2:15-CV-0165-MCE-ACP, 2022 WL 7099718, at *4 (E.D. Cal. Oct.

23  

24  [3] The only monetary relief referenced in his complaint is for "recovery of his costs in this suit[.]" *Id.* at 42.

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 11

12, 2022) ("Plaintiff does not have standing to pursue a claim about any policy to the extent it affects other inmates but has not concretely harmed him."), *report and recommendation adopted*, 2022 WL 17067616 (E.D. Cal. Nov. 17, 2022); *Jones v. Sinclair*, No. C14-1241-RAJ, 2015 WL 2383395, at *3 (W.D. Wash. May 18, 2015) (hypothetical discussion of DOC policy does not provide a basis for a lawsuit when the plaintiff has not suffered an injury-in-fact).

Second, neither Defendants' past conduct nor Mr. Brown's vehement disagreement with DOC's lack of religious accommodation in connection with its single cell policy—absent a showing that such policy is currently causing him injury or likely to injure him in the future—are sufficient to establish standing to seek declaratory or injunctive relief. Mr. Brown asserts that "[t]he past injury and current enforcement [of DOC's single cell housing accommodation policy] against Brown . . . easily/simply supports a *future* injury, when said policy still exists." Dkt. No. 26 at 8 (emphasis added). But as discussed above, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (cleaned up); *accord Mayfield*, 599 F.3d at 970. And Mr. Brown's conclusory statements otherwise do not meet this standard. *See, e.g.*, *Citizens for a Better Env't*, 523 U.S. at 109 ("Because respondent alleges only past infractions of [a federal statute], and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury.").[4] As Judge Peterson observes, the threat of Mr. Brown being denied a religious accommodation under

---

[4] In his objections to the R&R, Mr. Brown claims he is second on a transfer list to D-Unit (long term minimum housing). Dkt. No. 26 at 7, 12. Notwithstanding the Court's need to evaluate standing at the outset of litigation, and the fact that a plaintiff may not amend his complaint in objections to an R&R, *Brandon v. Dep't of Corr. of Washington*, No. 3:22-CV-05284-LK, 2023 WL 6066344, at *3 (W.D. Wash. Sept. 18, 2023), Mr. Brown does not state whether such transfer would result in him living in another single-man cell or a two-man cell, or otherwise burden his religious practice. Without more, the Court cannot infer based on the record before it that a future transfer to D-Unit—even to another single cell—would result in a RLUIPA or constitutional violation. *See, e.g.*, *Knows His Gun v. Montana*, 866 F. Supp. 2d 1235, 1242 (D. Mont. 2012) ("The possibility [of future transfer] is too speculative to support standing for injunctive or declaratory relief.").

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 12

this DOC policy in the future is speculative at this juncture, Dkt. No. 23 at 10–11, and thus it is insufficient to establish a live case or controversy, *see, e.g.*, *Clapper*, 568 U.S. at 409 (allegations of a "possible future injury" are insufficient) (cleaned up); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (injury showing for injunctive relief "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again"); *Mayfield*, 599 F.3d at 970 ("speculation or 'subjective apprehension' about future harm" does not support standing) (quoting *Friends of the Earth*, 528 U.S. at 184); *Bates*, 511 F.3d at 985 (plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way").

The Court therefore finds that Mr. Brown lacks standing to assert his claims for declaratory and injunctive relief. With respect to his request for injunctive relief in particular, even if Mr. Brown could show an injury in fact, "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Bates*, 511 F.3d at 985. Here, Mr. Brown's request for a "preliminary and permanent injunction ordering Defendants to provide a single cell assignment" to him is not necessary to redress his alleged injury because he is currently assigned a single cell. Dkt. No. 5 at 35, 42; Dkt. No. 16 at 3. Accordingly, this action is dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### III.  CONCLUSION

The Court, having reviewed the R&R, Mr. Brown's objections, and the remaining record, hereby finds and ORDERS:

1. Mr. Brown's objections are OVERRULED, Dkt. No. 26, and the Report and Recommendation is ADOPTED IN PART and MODIFIED IN PART, Dkt. No. 23.

2. This action is dismissed for lack of subject matter jurisdiction, and Defendants' motion for summary judgment, Dkt. No. 14, is denied as moot.

3. The Clerk of Court is directed to enter judgment and close this case.

Dated this 16th day of January, 2024.

*Lauren King*

Lauren King
United States District Judge

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 14